UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICOLE T. JONES,

                Plaintiff,

v.                                                                          6:16-CV-0044
                                                                            (GTS)
CAROLYN W. COLVIN,
Acting Comm'r of Soc. Sec.,[1]

                Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

OFFICE OF PETER M. HOBAICA, LLC              B. BROOKS BENSON, ESQ.
  Counsel for Plaintiff
2045 Genesee Street
Utica, NY 13501

U.S. SOCIAL SECURITY ADMIN.                    JUNE L. BYUN, ESQ.
OFFICE OF REG'L GEN. COUNSEL–REGION II     Special Assistant U.S. Attorney
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Nicole T. Jones

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 16, 22.)  For the reasons set forth below, Plaintiff's motion is denied

and Defendant's motion is granted.

---

[1]      Because Nancy A. Berryhill is now the Acting Commissioner of Social Security,
the Clerk of the Court is directed to substitute her for Acting Commissioner of Social Security
Carolyn W. Colvin as the Defendant in this action, pursuant to Fed. R. Civ. P. 25(d).

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1979.  (Tr. 54, 843.)  The highest level of education that she achieved was completing the ninth grade in high school.  (Tr. 881.)  Plaintiff's employment history consists of working as a cashier, sandwich maker, sales representative, temporary worker through a temporary employment and staffing agency, and winder / spinner / packer / doffer at a yarn mill.  (Tr. 140, 144, 165.)  Generally, Plaintiff's alleged disability consists of depression and bipolar disorder.  (Tr. 831.)  Plaintiff's alleged disability onset date is April 21, 2011, and her date last insured is June 30, 2011.  (Tr. 154.)

### B.    Procedural History

On May 31, 2011, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  (Tr. 103, 154.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 49-51.)  On October 24, 2013 (Tr. 877-903), and June 24, 2014 (Tr. 865-76), Plaintiff appeared before ALJ Elizabeth Koennecke.  On August 26, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (Tr. 6-21.)  On November 9, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 2-5.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  (Tr. 12-19.)  First, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since April 21, 2011, her alleged onset date. (Tr. 12.) Second, the ALJ found that Plaintiff's left forearm arteriovenous malformation is a severe impairment. (*Id.*) Third, the ALJ found that Plaintiff's impairment does not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix, 1. (Tr. 15.) In so doing, the ALJ considered Listing 1.02B. (*Id.*) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to (a) stand and/or walk for six hours in an eight-hour workday, (b) sit for six hours in an eight-hour work day, (c) understand and follow simple instructions and directions, (d) perform simple tasks with supervision and independently, (e) maintain attention and concentration for simple tasks, (f) regularly attend to a routine and maintain a schedule, (g) relate to and interact with others in order to carry out simple tasks, and (h) handle work-related stress to the extent that she is able to make decisions directly related to the performance of simple tasks in any work environment. (*Id.*) In addition, the ALJ found that Plaintiff does not have any limitations in her ability to use her dominant upper right extremity to lift, carry, push, and pull, but that she cannot use her non-dominant upper left extremity to lift, carry, push, and pull. (*Id.*) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 19.) Sixth, and finally, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*)

## II.     THE PARTIES' BRIEFINGS ON THEIR CROSS-MOTIONS

### A.     Plaintiff's Arguments

Generally, Plaintiff makes the following eight arguments in support of her motion for judgment on the pleadings.

First, Plaintiff argues that the ALJ erred by failing to order a consultative intelligence examination, despite record evidence establishing that she received special education through the ninth grade of school, for the following five reasons: (1) consultative psychological examiner Dennis Noia, Ph.D., opined that Plaintiff's "intellectual functioning is estimated to be in the borderline range"; (2) despite evidence that the Social Security Administration received records from Plaintiff's high school, which may provide information regarding her learning disabilities, there is no evidence that these records were included as an exhibit or considered by the ALJ; (3) record evidence demonstrates that Plaintiff suffers from significant cognitive deficits that likely affect her ability to engage in full-time unskilled work on a competitive basis; (4) the ALJ has an affirmative duty to develop the record, especially when, as here, there is record evidence that Plaintiff suffers from a cognitive disorder; and (5) an intelligence examination is necessary in order to properly assess whether Plaintiff's impairments meet Listing 12.05(C), particularly because the ALJ has already found that Plaintiff has a severe physical impairment.  (Dkt. No. 16, at 20-23 [Pl.'s Mem. of Law].)[2]

Second, Plaintiff argues that the ALJ failed to fully develop the record by not obtaining additional information regarding her left forearm arteriovenous malformation and knee condition.  (*Id.* at 24.)  Specifically, Plaintiff argues that, rather than give reduced weight to the opinion of Vittorio Antonacci, M.D., because it was inconsistent with other record evidence, the ALJ should have ordered a functional assessment.  (*Id.*)  Similarly, Plaintiff argues that the ALJ should have ordered an assessment of Plaintiff's right knee condition from her treating physician rather than

---

[2]        Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties' respective motion papers.

assume that the condition was temporary and could not meet the twelve month duration requirement.  (*Id.*)

Third, Plaintiff argues that the ALJ erred in failing to (a) find that her diagnosed depressive disorder is a severe impairment, (b) develop the record concerning her PTSD symptoms, and (c) properly evaluate her mental impairments.  (*Id.* at 25.)  Specifically, Plaintiff argues that, although the ALJ acknowledged her diagnosis for various mental impairments, including mood disorder, PTSD, and anxiety disorder, the ALJ failed to explain why these impairments do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities.  (*Id.* at 25-26.)  Plaintiff argues that the ALJ should have requested clarifying information from psychologist Benedetta Melnick, Ph.D., regarding her evaluation, before giving significant weight to Dr. Noia's opinion that found Plaintiff was not disabled.  (*Id.* at 26.)

Furthermore, Plaintiff argues that the ALJ failed to properly assess her mental RFC because the ALJ did not discuss the impact her mental impairments have on her functional ability.  (*Id.*)  Plaintiff argues that, although the ALJ discussed the four factors set forth in 20 C.F.R. § 404.1562(a), her discussion of those factors was not sufficiently detailed to constitute RFC findings.  (*Id.*)

Fourth, Plaintiff argues that the ALJ failed in her duty to develop the record when she did not obtain a functional assessment of Plaintiff's work abilities from a treating physician and, instead, gave significant weight to the opinions of Dr. Noia and consultative internal medicine examiner Rita Figueroa, M.D., when formulating her own RFC.  (*Id.* at 26-27.)

-5-

Fifth, Plaintiff argues that the ALJ impermissibly substituted her own opinion for that of a physician when she concluded that Plaintiff can "stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday." (*Id.* at 28.)  Plaintiff argues that this conclusion is contrary to Dr. Figueroa's opinion that Plaintiff can stand/or walk for only a total of 20 minutes in an eight-hour work day and can sit for only five hours in an eight-hour work day. (*Id.*)  Furthermore, Plaintiff argues that the ALJ implicitly found that she can occasionally stoop because light work, by its nature, requires the ability to occasionally stoop, which is contradicted by Dr. Figueroa's opinion that Plaintiff cannot stoop.  (*Id.*)

Sixth, Plaintiff argues that the ALJ failed to perform the required analysis under SSR 96-7p as well as provide an adequate narrative discussion that explained her reasons for rejecting Plaintiff's statements concerning her disabling physical pain, daytime fatigue, problems concentrating and paying attention, and depression as "not fully credible."  (*Id.* at 28-29.)

Seventh, Plaintiff argues that the ALJ failed to fully consider Plaintiff's hearing testimony, particularly the portions regarding her daytime fatigue, depression, and problems with mental demands, and instead focused on snippets of testimony that conformed to her conclusion that Plaintiff is able to perform "simple tasks." (*Id.* at 29.)  Plaintiff argues that the ALJ's assessment of her hearing testimony was not in accordance with relevant Social Security Regulations and remand is therefore required.  (*Id.*)

Eighth, and finally, Plaintiff argues that the hypothetical questions posed to the vocational expert ("VE") by the ALJ were not supported by substantial evidence because the ALJ erred in assessing Plaintiff's credibility by ignoring most of her testimony regarding the severity of her exertional and mental limitations.  (*Id.* at 30.)  Therefore, because the hypothetical questions

were not supported by substantial evidence, Plaintiff argues that the ALJ erred by relying on the VE's responses to those questions and ultimately concluding that there are jobs that exist in significant numbers in the national economy which Plaintiff can perform.  (*Id.*)

B.    **Defendant's Arguments**

Generally, Defendant makes the following five arguments in opposition to Plaintiff's motion for judgment on the pleadings and in support of her own such motion.

First, Defendant argues that the ALJ did not err by declining to order a consultative intelligence examination because (a) an ALJ has discretion in deciding whether to order an intelligence examination, (b) an intelligence examination was unnecessary because the record evidence indicated that Plaintiff had mental impairments that did not cause more than minimal limitation in her ability to perform basic mental work activities, (c) the ALJ acknowledged Plaintiff's various mental impairments at Step Two (of the five-step disability analysis) and continued to consider those impairments when evaluating the RFC, (d) the ALJ posed a hypothetical question to the VE that took into consideration Plaintiff's age and education, and (e) Plaintiff was represented by the same attorney throughout the administrative process and she had ample opportunity to retrieve her own mental health records and obtain an intelligence examination.  (Dkt. No. 22, at 8-11 [Pl.'s Opp'n Mem. of Law].)

Second, Defendant argues that the ALJ did not fail in her duty to fully develop the record regarding Plaintiff's physical impairments and Plaintiff's argument on this point is more of a disagreement with how the ALJ weighed the evidence.  (*Id.* at 11.)  Specifically, Defendant argues that, because Plaintiff is unable to point to evidence that supports a finding that she has greater limitations than the ones found by the ALJ, she attempts to argue that the ALJ was

required to seek additional information.  (*Id.* at 12.)  However, Defendant argues that this is improper burden-shifting and it is the claimant's burden to establish her RFC limitations.  (*Id.*)  Therefore, Defendant argues, a lack of evidence of disabling conditions supports a finding that Plaintiff was not disabled.  (*Id.*)

Third, Defendant argues that the ALJ's RFC assessment is supported by substantial evidence.  With respect to Plaintiff's physical impairments, Defendant argues that the ALJ properly relied on Dr. Figueroa's opinion that Plaintiff had marked limitations in her ability to handle objects and carry things with her left hand as well as moderate restrictions with walking, squatting, and kneeling due to her right knee sprain.  (*Id.* at 14.)  However, Defendant argues that the ALJ properly declined to give significant weight to the portion of Dr. Figueroa's opinion that Plaintiff was limited in her ability to stand, walk, and kneel because any such limitation was based on Plaintiff having sprained her knee only three months before Dr. Figueroa's examination. (*Id.*)  In any event, even if Plaintiff's right knee pain met the twelve-month durational requirement, Defendant argues that a limited range of light work would not be inconsistent with moderate limitations in the ability to stand, walk, and kneel.  (*Id.*)

With respect to Plaintiff's left forearm arteriovenous malformation, Defendant argues that the ALJ's decision to limit Plaintiff from using her upper left extremity to lift, carry, push, and pull, is supported by Dr. Antonacci's treatment notes and statements, as well as Plaintiff's testimony that she does not have any problems with her right arm.  (*Id.* at 15.)  Furthermore, Defendant argues that the ALJ did not err by declining to re-contact Dr. Antonacci and ordering a functional assessment because, even if a limitation is not supported or contradicted by the record evidence, it does not mean that there is a conflict or ambiguity that requires re-contact.  (*Id.* at 15-16.)

With respect to whether the record contained medical opinions supporting the ALJ's conclusions that Plaintiff can perform the requirements of her RFC finding, Defendant argues that the ALJ's RFC determination does not have to correspond perfectly with a specific medical opinion.  (*Id.* at 16.)  More specifically, Defendant argues that it is the ALJ's responsibility, and not a physician's, to determine a claimant's RFC and that the ALJ in this case made her RFC assessment after reviewing all of the record evidence, which was consistent with her conclusions.  (*Id.*)

Fourth, Defendant argues that the ALJ's credibility determination regarding Plaintiff's testimony is supported by substantial evidence because the ALJ properly found that Plaintiff's credibility was undermined by her reported daily activities and poor work history.  (*Id.* at 17.)  With respect to Plaintiff's argument that the ALJ did not properly evaluate her subjective complaints of pain, Defendant argues that the ALJ reviewed and discussed the objective and opinion evidence of record.  (*Id.* at 18.)  This includes a review of Dr. Figueroa's opinion that, as a result of Plaintiff's left arm impairment, she has marked restrictions in handling objects and Dr. Antonacci's opinion that Plaintiff is limited to lifting no more than ten pounds and should not engage in hard activity.  (*Id.*)  Ultimately, Defendant argues, the ALJ limited Plaintiff to light work that required no use of her left arm in order to account for her subjective complaints of pain.  (*Id.*)

Fifth, and finally, Defendant argues that, because the ALJ's RFC determination is supported by substantial evidence, the hypothetical questions posed to the VE, which were based on the ALJ's RFC, were proper and also supported by substantial evidence.  (*Id.*)  Therefore, Defendant argues that the ALJ was entitled to rely on the VE's responses in finding that there is work in the national economy that Plaintiff can perform.  (*Id.*)

### III.     RELEVANT LEGAL STANDARD

#### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or the determination was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## IV.    ANALYSIS

### A.    Whether the ALJ Erred by Failing to Order a Consultative Intelligence Examination

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated by Defendant in her memorandum of law. (Dkt. No. 22, at 8-11 [Def.'s Mem.

of Law].) To those reasons, the Court adds the following analysis.

A consultative examination is used to "try to resolve an inconsistency in the evidence, or

when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or

decision" on the claim. *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013)

(citing 20 C.F.R. §§ 404.1519a[b], 416.919a[b]). The ALJ has discretion to order a consultative

examination to further develop the evidentiary record. *Serianni v. Astrue*, 07-CV-250, 2010 WL

786305, *5 (N.D.N.Y. Mar. 1, 2010) (Mordue, J.) (citing *Hughes v. Apfel*, 992 F. Supp. 243, 248

[W.D.N.Y.1997]); 20 C.F.R. §§ 404.1517, 416.917. "Several courts have held . . . that in

fulfilling the duty to conduct a full and fair inquiry, an ALJ is required to order a consultative

examination where the record establishes that such an examination is necessary to enable the ALJ

to render a decision." *Serianni*, 2010 WL 786305 at *5. However, the ALJ is not required to

order a consultative examination if the facts do not warrant or suggest the need for it. *Tankisi*,

521 F. App'x at 32; *see also Lefever v. Astrue*, 07-CV-0622, 2010 WL 3909487, at *7 (N.D.N.Y.

Sept. 30, 2010) (Mordue, J.), *aff'd*, 443 F. App'x 608 (2d Cir. 2011); *Gorman v. Colvin*, 14-CV-

0103, 2015 WL 1383823, at *4 (N.D.N.Y. Mar. 25, 2015) (McAvoy, J.) ("Plaintiff fails to point

to evidence during the relevant period showing that her intellectual capacity precluded her from

engaging in simple, routine, and repetitive unskilled work activities, and therefore the ALJ had no duty to order a consultive intellectual evaluation.").

Here, the Court finds that the ALJ did not abuse her discretion in deciding not to order an intelligence examination. Specifically, the ALJ considered the fact that Plaintiff's highest level of education was completing the ninth grade, that she did not receive a GED, and that she received special education. (Tr. 16, 19.) The ALJ was also aware of Plaintiff's mental impairments and noted that Dr. Noia indicated the following diagnosis: "[rule out] Borderline Intellectual Functioning." (Tr. 13, 813.) However, "[t]he Court is mindful that in general, passing references in the record to a claimant's low intelligence do not trigger an ALJ's obligation to order intelligence testing, particularly where other evidence of record, such as the claimant's education, work history, and activities of daily living, does not suggest a severe cognitive impairment." *Wallace v. Colvin*, 120 F. Supp. 3d 300, 305 (W.D.N.Y. 2015); *see also Cox v. Astrue*, 993 F. Supp. 2d 169, 177-78 (N.D.N.Y. 2012) (McAvoy, J.) (finding that ALJ was not obligated to obtain an intelligence examination where the facts did not warrant it). The facts in the present case did not warrant obtaining an intelligence examination for the reasons stated by Defendant in her memorandum of law. (Dkt. No. 22, at 8-10 [Def.'s Mem. of Law].)

Plaintiff argues that an intelligence examination was necessary because it could have led to a finding that she was disabled under Listing 12.05(C). (Dkt. No. 16, at 21 [Pl.'s Mem. of Law].) Listing 12.05 is entitled "Intellectual disability." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05. To meet the requirements of Listing 12.05(C), a claimant must show "(1) below average intellectual function with adaptive functioning deficits manifested before age [twenty-two] and continuing during the claim period, (2) a valid IQ score of [sixty] through [seventy], and (3) an

impairment, other than [his] low IQ, that imposes an additional and significant work-related limitation of functioning." *Lyons v. Colvin*, 13-CV-0614, 2014 WL 4826789, at \*6 (N.D.N.Y. Sept. 29, 2014) (McAvoy, J.) (internal quotation marks and citations omitted). That the third requirement has been satisfied is not in dispute because the ALJ found Plaintiff's left forearm arteriovenous malformation to be a severe impairment. *See Lyons*, 2014 WL 4826789, at \*12 ("The Second Circuit 'has not yet ruled on what test should be utilized with respect to § 12.05(C)[,]' . . . [but] '[t]he district courts of the Second Circuit have generally adopted the view of the First, Eighth, and Tenth Circuits to the effect that 'a limitation other than low IQ is 'significant' if the claimant suffers from an additional physical or other mental impairment that is 'severe' as that term is defined at step two of the Commissioner's sequential analysis.'").

As an initial matter, the Court notes that the ALJ's decision is devoid of any mention of Listing 12.05(C). However, the failure to discuss this Listing, in and of itself, does not constitute reversible error. *See Solis v. Berryhill*, No. 16-1692, 2017 WL 2416900, at \*2 (2d Cir. June 5, 2017) (holding that ALJ did not have to explicitly discuss a listing where his "general conclusion (that Solis did not meet a listed impairment) is supported by substantial evidence"); *Jackson v. Colvin*, 14-CV-0756, 2015 WL 5005740, at \*3 (N.D.N.Y. Aug. 20, 2015) (Sharpe, J.) (holding that ALJ's failure to discuss Listing 12.05[C] was not reversible error where it was apparent from ALJ's decision that he considered the requirements of 12.05[C]); *Clark v. Colvin*, 12-CV-1507, 2013 WL 6795627, at \*10 (N.D.N.Y. Dec. 18, 2013) (Hurd, J.) (noting that the ALJ's failure to mention Listing 12.05[C] by its number was harmless error where the court could glean from the ALJ's decision that he considered the Listing 12.05[C] requirements). In any event, the Court finds that Plaintiff has failed to meet her burden with respect to the first requirement of Listing

12.05(C), i.e., that she has deficits in adaptive functioning that initially manifested before she reached the age of twenty-two.

"Adaptive functioning refers to an individual's ability to cope with the challenges of ordinary everyday life." *Green v. Colvin*, 14-CV-6632, 2016 WL 943620, at *9 (W.D.N.Y. Mar. 14, 2016) (internal quotation marks and citations omitted). "Courts have enumerated examples of daily activities that evidence adequate adaptive functioning: successful education in regular classes as opposed to special education courses, living on one's own, taking care of children without help, paying bills and managing one's own finances, and engaging in productive social relationships." *Marmer v. Colvin*, 13-CV-2787, 2014 WL 1365471, at *4 (E.D.N.Y. 2014). Here, the ALJ gave significant weight to Dr. Noia's finding that Plaintiff does not have limitations in her ability to (a) understand, remember, and carry out simple instructions, and (b) make judgments on simple work-related decisions. (Tr. 17.) Furthermore, Dr. Noia found that Plaintiff has only mild limitations in her ability to interact appropriately with the public, supervisors, and co-workers as well as in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 17-18.)

The ALJ also applied the "special technique" at Step Two, which required her to assess four categories of functionality: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ found Plaintiff was mildly limited in the first three functional areas and did not have any episodes of decompensation. (Tr. 14.) In her discussion of Plaintiff's activities of daily living, the ALJ once again cited Dr. Noia's report, which stated that Plaintiff is able to dress, bathe, groom herself, cook and prepare meals with help from her children, do general

cleaning slowly, do laundry, shop, manage money, and use public transportation.  (*Id.*)  The ALJ

also noted that mental health treatment notes consistently pointed out that Plaintiff is able to care

for her children and attend church.  (*Id.*)

Finally, Plaintiff indicated that she could pay bills, count change, handle a savings

account, and use a checkbook or money orders.  (Tr. 160.)  Her hobbies included writing,

reading, text messaging on the telephone, and computers.  (Tr. 161.)  Plaintiff also has an

extensive work history, which further indicates that she has the ability to perform at least

unskilled work, despite her alleged intellectual impairments.  (Tr. 140, 144, 165.)  Under these

circumstances, there is substantial evidence to support the conclusion that, even if the ALJ erred

in failing to develop the record, the error was harmless, because Plaintiff has not demonstrated

that she has deficits in adaptive functioning.  *Jackson*, 2015 WL 5005740, at *3.

### B.    Whether the ALJ Failed to Fully Develop the Record with Regard to Plaintiff's Physical Impairments

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated by Defendant in her memorandum of law.  (Dkt. No. 22, at 11-12, 14-16

[Def.'s Mem. of Law].)  To those reasons, the Court adds the following two points.

First, Plaintiff argues that the ALJ should have ordered a full function-by-function

assessment from Dr. Antonacci if she thought one was needed to give more weight to his opinion

that Plaintiff should be limited to sedentary work with a ten pound lifting restriction.  (Dkt. No.

16, at 24 [Pl.'s Mem. of Law].)  However, the ALJ's failure to obtain a functional assessment, in

and of itself, does not require remand.  *See Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 317

(W.D.N.Y. 2013) ("Although nothing in the record indicates that the ALJ attempted to obtain a

functional assessment from Dr. Samikkannu, her failure to request such an assessment does not

necessarily mandate remand.") (citing cases). "Instead, the relevant inquiry is whether, in the

absence of the assessment, the record was sufficient to support the ALJ's RFC assessment."

*Diakogiannis*, 975 F. Supp. 2d at 317; *see also Kunkel v. Comm'r*, 12-CV-6478, 2013 WL

4495008, at *17 (W.D.N.Y. Aug. 20, 2013) ("[T]o the extent Plaintiff maintains that reversal is

automatically required in this action merely because the ALJ did not request or obtain an RFC

assessment from Nigwekar, the Court disagrees. Rather, the issue is whether the record was

adequate to permit the ALJ to determine whether or not Plaintiff was disabled."). Here, the Court

finds that the record evidence was sufficient to support the ALJ's RFC findings without a

functional assessment from Dr. Antonacci. (Tr. 17-19.) The Court reaches the same conclusion

with respect to whether the ALJ should have obtained a functional assessment from Dr. Melnick

and/or Beverly Ischia, NP, because, again, the record evidence was sufficient to support the

ALJ's findings. (Tr. 16-19.)

Second, Plaintiff argues that the ALJ rejected Dr. Figueroa's limitation assessment by

"assuming without proof" that her right knee injury is temporary and cannot meet the twelve

month duration requirement. (Dkt. No. 16, at 24 [Pl.'s Mem. of Law].) However, it is Plaintiff's

burden to demonstrate that her impairment has lasted, or is expected to last, twelve months from

the onset of disability. *See Smith v. Colvin*, 17 F. Supp. 3d 260, 265 (W.D.N.Y. 2014) ("The

claimant bears the burden of proof with respect to the first four steps of the analysis."); SSR 82-

52. Here, Plaintiff's medical records indicate that, on September 24, 2013, she was seen by NP

Ischia, who noted that Plaintiff had fallen on her knee after tripping on railroad tracks. (Tr. 636.)

However, NP Ischia also noted that x-rays were negative for a sprained right knee. (*Id.*)

Thereafter, on October 24, 2013, Plaintiff testified at her administrative hearing that her knee

injury was expected to heal in four to six weeks.  (Tr. 889.)  On November 5, 2013, Plaintiff was seen again by NP Ischia, who noted in Plaintiff's progress notes that Plaintiff had a right knee sprain without mentioning a basis for this diagnosis.  (Tr. 638.)  Finally, on January 1, 2014, Plaintiff was examined by Dr. Figueroa, who noted that Plaintiff had a right knee sprain and was continuing to experience sharp pain.  (Tr. 819.)

Although Plaintiff's complaints to Dr. Figueroa indicate that her injury did not heal within the initial four-to-six week prognosis, this does not mean that the injury would not have healed within twelve months.  In other words, Plaintiff has not submitted (or pointed to) any objective medical evidence indicating that her right knee injury was expected to last up to twelve months or longer, other than the fact that she continued to experience pain beyond her initial four-to-six week prognosis.  Perhaps most importantly, the ALJ noted that Plaintiff has not established that her knee injury was in fact a knee sprain.  (Tr. 13.)  As NP Ischia noted, x-rays were negative for a sprain.  (Tr. 636.)  NP Ischia does not state the basis for a right knee sprain diagnosis during her follow-up examination of Plaintiff.  (Tr. 638.)  Furthermore, nurse practitioners are not acceptable medical sources.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) ("[T]he diagnosis of a nurse practitioner should not be given the extra weight accorded a treating physician."); *accord, Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008).  For these reasons, as well as for the reasons stated by Defendant in her memorandum of law (Dkt. No. 22, at 14-16 [Def.'s Mem. of Law]), the Court finds that the ALJ did not err by declining to order an assessment of Plaintiff's knee condition.

C.    **Whether the ALJ Erred in Failing to Find that Plaintiff's Diagnosed Depressive Disorder Is a Severe Impairment and Whether the ALJ Failed to Properly Evaluate Plaintiff's Mental Impairments**

After carefully considering the matter, the Court answers both of these questions in the negative for the reasons discussed below.

The claimant bears the burden of presenting evidence establishing severity at Step Two of the disability analysis. *Briggs v. Astrue*, 09-CV-1422, 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Bianchini, M.J.), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011) (Scullin, J.). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at Step Two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include the following: (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely by a diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Hamilton v. Astrue*, 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013).

An ALJ should make a finding of "'not severe'. . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." SSR 85-28, 1985 WL 56856, at *3. The Second Circuit has held that the Step Two analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at Step Three through Step Five. *Dixon*, 54 F.3d at 1030.

Here, the Court finds that the ALJ properly found Plaintiff's depressive disorder to be non-severe for the reasons discussed by the ALJ in her decision. (Tr. 13-14.) In any event, even if the ALJ erred in this regard, it would amount to only a harmless error because the ALJ considered the limiting effects of Plaintiff's mental impairments during the subsequent steps of her analysis. (Tr. 16-18.) *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding alleged Step Two error harmless because ALJ considered impairments during subsequent steps); *Snyder v. Colvin*, 13-CV-0585, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) (Sharpe, C.J.) ("[W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through sequential evaluation on the basis of combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless."). Indeed, the ALJ incorporated mental limitations into her ultimate RFC determination. (Tr. 15.)

With respect to whether the ALJ properly evaluated Plaintiff's mental impairments, Plaintiff argues that the ALJ "does not discuss the impact of [her] mental impairments on her functional ability" and that "nowhere in her Decision does the ALJ explain specifically why Plaintiff would be able to 'understand and follow' simple instructions and directions in the workplace, 'to perform simple tasks with supervision and independently,' etc." (Dkt. No. 16, at 26 [Pl.'s Mem. of Law].)  However, the ALJ gave significant weight to Dr. Noia's opinion, which stated that Plaintiff does not have any limitations in her ability to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions.  (Tr. 17.)  *See Lauber v. Colvin*, 14-CV-6146, 2015 WL 4600356, at *5 (W.D.N.Y. July 29, 2015) ("The Second Circuit also has found that a consultative examiner's opinion can constitute substantial evidence in support of an ALJ's RFC assessment.").  The ALJ further discussed Dr. Noia's opinion that Plaintiff has mild limitations in her ability to interact appropriately with the public, supervisors, and co-workers as well as in her ability to respond appropriately to usual work situations and to changes in a routine work setting.  (Tr. 17-18.)  The ALJ incorporated these limitations into her RFC, concluding as follows:

> Although the claimant only has mild psychological limitations in the [paragraph] B criteria and non-severe mental impairments, . . . the claimant has been protectively limited to the functions of unskilled work in the above-listed [RFC] due to the combination of her non-severe mental impairments, reports of chronic pain due to her left upper extremity impairment, and the side effects of medication and treatment.

(Tr. 18.)  Therefore, the Court finds that the ALJ properly evaluated Plaintiff's mental impairments and adequately considered them in formulating her RFC.

### D.    Whether the ALJ Improperly Substituted Her Own Opinion for an Expert Medical Opinion

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendant in her memorandum of law.  (Dkt. No. 22, at 16-17 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following one point.

The Second Circuit has held that the ALJ's RFC determination need not "perfectly correspond with" any medical source opinion.  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Rather, the ALJ is "entitled to weigh all of the evidence available to make a[ ] . . . finding that [is] consistent with the record as a whole."  *Matta*, 508 F. App'x at 56.  In the present case, Plaintiff argues that the ALJ made her own determination that Plaintiff can stand or walk for six hours despite Dr. Figueroa's opinion that she is limited to performing both of these activities for twenty minutes each.  (Dkt. No. 16, at 28 [Pl.'s Mem. of Law].)  In addition, Plaintiff argues that the ALJ determined that she can sit for six hours and can perform light work (which requires occasional stooping) despite Dr. Figueroa's opinion that Plaintiff can sit for only five hours and that she cannot stoop at all.  (*Id.*)  However, as discussed above in Part IV.B. of this Decision and Order and in the ALJ's decision (Tr. 13, 18), Dr. Figueroa's assessment was based on Plaintiff's temporary knee injury that did not meet the durational requirement, was not supported by objective medical evidence, and was not consistent with Plaintiff's activities of daily living. Accordingly, it was proper for the ALJ not to incorporate these limitations into her RFC determination.  In formulating Plaintiff's RFC, the ALJ weighed all of the evidence and made a determination that was consistent with the record as a whole.  (Tr. 15-19; Dkt. No. 22, at 12-17 [Def.'s Mem. of Law].)

**E.      Whether the ALJ Improperly Evaluated Plaintiff's Credibility**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendant in her memorandum of law.  (Dkt. No. 22, at 17-18 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (Mordue, C.J., adopting Report-Recommendation of Bianchini, M.J.) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work.  Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and

> intensity of claimant's symptoms; (3) precipitating and aggravating
> factors; (4) type, dosage, effectiveness, and side effects of any
> medication taken to relieve symptoms; (5) other treatment received
> to relieve symptoms; (6) any measures taken by the claimant to
> relieve symptoms; and (7) any other factors concerning claimant's
> functional limitations and restrictions due to symptoms.

*Id.* (citing §§ 404.1529[c][3][i]-[vii], 416.929[c][3][i]-[vii]).  Further, "[i]t is the role of the

Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the

credibility of witnesses,' including with respect to the severity of a claimant's symptoms."

*Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health &*

*Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

In the present case, the ALJ found that Plaintiff's credibility was undermined by her

reported daily activities, which included caring for her two children, performing self-care,

preparing meals, using public transportation, and attending church.  (Tr. 17, 157-61, 622, 796,

798, 799, 812.)  The ALJ also considered Plaintiff's poor work history.  (Tr. 17.)  *See also* 20

C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (stating that information about a claimant's prior work

record is a pertinent credibility factor).  Therefore, the ALJ properly concluded that, although

Plaintiff was limited in her mental and physical capacity, her statements regarding her daily

activities were inconsistent with her allegations of disabling symptoms and limitations.  (Tr. 17.)

Plaintiff's argument that the ALJ failed to explicitly evaluate her complaints in light of

the seven statutory factors noted above is unpersuasive.  "Because the ALJ thoroughly explained

his credibility determination and the record evidence permits us to glean the rationale of the

ALJ's decision, the ALJ's failure to discuss those factors not relevant to his credibility

determination does not require remand."  *Cichocki*, 534 F. App'x at 76.  Here, the ALJ complied

with the Regulations and articulated the inconsistencies that she considered in discrediting

Plaintiff's allegations of disabling impairments. (Tr. 16-17.) In evaluating Plaintiff's allegedly totally disabling pain symptoms, the ALJ reviewed and discussed the objective evidence of record and the opinion evidence. Specifically, Dr. Figueroa opined that, as a result of Plaintiff's left arm impairment, she has marked restrictions handling objects. (Tr. 823.) Dr. Antonacci stated that Plaintiff was limited to lifting no more than ten pounds and was restricted from hard activity. (Tr. 245.) Nevertheless, the ALJ limited Plaintiff to light work that required *no* use of her left arm in order to account for her subjective complaints of pain.

### F.    Whether the ALJ Improperly Relied on the VE's Testimony

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendant in her memorandum of law. (Dkt. No. 22, at 18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following one point.

An ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where a hypothetical question is based on an ALJ's RFC analysis which is supported by substantial evidence, the hypothetical question is proper. *Calabrese*, 358 F. App'x at 276-77. Here, because the ALJ's RFC determination is supported by substantial evidence, and because the ALJ posed hypothetical questions to the VE that were based on her RFC, the ALJ properly relied on the VE's testimony when she concluded that there is work in the national economy that Plaintiff can perform.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of the Court is directed to substitute Acting Commissioner Nancy A. Berryhill for Acting Commissioner of Social Security Carolyn W. Colvin as the Defendant in this action, pursuant to Fed. R. Civ. P. 25(d); and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: July 14, 2017
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge